**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EVA L. KING,

        Plaintiff,

vs.                             Case No. 3:16-cv-1466-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Eva L. King ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for supplemental security benefits ("SSI"). Plaintiff's alleged inability to work is a result of a "bulging disc in [her] back," rheumatoid arthritis, agoraphobia, anxiety, and depression. Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed February 6, 2017, at 58, 76, 203 (emphasis omitted). On May 7, 2013, Plaintiff filed an application for SSI, alleging an onset disability date of June 1, 2007. Tr. at 160.[2] Plaintiff's application was denied initially, see Tr. at 58-73, 75, and was denied upon reconsideration, see Tr. at 76-91, 92.

On May 14, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr.

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed February 6, 2017; Reference Order (Doc. No. 14), entered February 7, 2017.

[2]    Although actually completed on May 7, 2013, see Tr. at 160, the protective filing date of the application is listed elsewhere in the administrative transcript as April 22, 2013, see Tr. at 58.

at 38-57. At the time of the hearing, Plaintiff was forty-five years old. <u>See</u> Tr. at 42. The ALJ issued a Decision on May 27, 2015, finding Plaintiff not disabled since April 22, 2013, the date the SSI application was filed. Tr. at 19-32.

The Appeals Council then received additional evidence in the form of a brief from Plaintiff's counsel. Tr. at 4, 5; <u>see</u> Tr. at 265-66 (brief). On September 26, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On November 23, 2016, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments: 1) "the ALJ erred in finding that [Plaintiff's] mental impairments do not meet . . . Listing [12.05]"; and 2) "the ALJ erred in excluding limitations from [Plaintiff's residual functional capacity ('RFC')]." Plaintiff's Memorandum of Law (Doc. No. 17; "Pl.'s Mem."), filed April 10, 2017, at 11, 20 (emphasis and some capitalization omitted). On June 9, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-31. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 22, 2013, the application date." Tr. at 21 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorder of the spine; rheumatoid arthritis; anxiety-related disorder; affective mood disorder; borderline IQ; and a learning disorder." Tr. at 21 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform sedentary or light work as defined in 20 [C.F.R. §§] 416.967(a) and (b) with additional restrictions. [Plaintiff] can occasionally bend, crouch, kneel and stoop, but cannot squat, crawl, or the operation of foot controls [sic]. [Plaintiff] is limited to work that allows her to alternate between periods of sitting and standing, at her option, to perform assigned tasks. [Plaintiff] must avoid ladders, unprotected heights, and the operation of heavy, moving machinery. [Plaintiff] is limited to simple tasks and needs a low-stress work environment, meaning no production line work. [Plaintiff] must avoid contact with the public and co-workers, and is limited to work that does not require the assistance of others or for her to assist others in performing their tasks.

Tr. at 24 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work." Tr. at 30 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[forty-three] years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 30 (emphasis and citation omitted), including "Hospital Products Assembler," "Mail Clerk," and "Lens Inserter," Tr. at 31. The ALJ concluded that Plaintiff "has not been under a disability . . . since April 22, 2013, the date the application was filed." Tr. at 31 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)

(internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff takes issue with the ALJ's finding that Plaintiff does not meet Listing 12.05 and with the ALJ's RFC determination. See Pl.'s Mem. at 11-24. In raising these issues, Plaintiff challenges the ALJ's rejection of Dr. Sherry V. Risch's[4] opinion. See Pl.'s Mem. at 17, 18, 20, 21-22, 23-24. This challenge is more developed in some parts of the memorandum, see id. at 21-22, than in others, see id. at 17, 18, 20, 23-24. For ease of discussion, the undersigned first addresses the ALJ's rejection of Dr. Risch's opinions as to Plaintiff's inability to maintain persistence and pace and her inability to interact appropriately with supervisors, and then Plaintiff's two main arguments are addressed.

## A. Dr. Risch's Opinion

Plaintiff asserts the ALJ erred in "preferring the opinion of [a] non-examining source over that of the examining source[, Dr. Risch]." Id. at 17; see also id. at 18, 20. Plaintiff specifically takes issue with the ALJ's rejection of Dr. Risch's opinions that Plaintiff is unable to maintain persistence and pace and that she is unable to interact appropriately with supervisors. Id. at 21-22.[5] Responding, Defendant argues that "as the ALJ found, the

---

[4]     Dr. Risch is an examining physician, who evaluated Plaintiff in August 2009 and in June 2013 at the request of the SSA. See Tr. at 337-41, 369-74.

[5]     In challenging the ALJ's step-three finding that Plaintiff has moderate limitations in

(continued...)

evidence [does] not support the severity of Plaintiff's pain complaints, which undermines Dr. Risch's opinion on persistence and pace." Def.'s Mem. at 14 (citation omitted). Defendant contends the ALJ properly discounted Dr. Risch's opinion on Plaintiff's inability to interact appropriately with supervisors because there was other evidence of record that contradicted it, including Plaintiff's own testimony. Id. at 17-18.

### 1. Applicable Law[6]

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any]

---

[5](...continued)
activities of daily living, Tr. at 22, Plaintiff cites a number of Dr. Risch's opinions, see Pl.'s Mem. at 16. As noted below, most of these opinions relate to Plaintiff's intellectual abilities, not to her ability to perform activities of daily living. See infra Part IV.B.2.b. The issue of whether substantial evidence supports the ALJ's finding as to Plaintiff's activities of daily living is addressed infra at Part IV.B.2.b.

[6]        On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[7]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); <u>see also</u> 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. <u>Id.</u> When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). <u>Id.</u>

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. it. <u>Hargress v. Soc. Sec. Admin., Comm'r</u>, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the

---

[8]    A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. <u>See</u> 20 C.F.R. § 404.1502.

evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279

(11th Cir.1987)); <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005); <u>Lewis</u>, 125 F.3d at 1440.

### 2. Analysis of ALJ's Findings

The ALJ gave "no weight" to Dr. Risch's opinions that Plaintiff is unable to interact appropriately with supervisors and that she is unable to maintain persistence and pace because, according to the ALJ, these opinions are inconsistent with other evidence of record. Tr. at 28; <u>see</u> Tr. at 373 (Dr. Risch's opinions).[9] Upon review, the undersigned determines that in noting these inconsistencies, the ALJ provided sufficient reasons to discount Dr. Risch's opinions. <u>See</u> <u>Oldham</u>, 660 F.2d at 1084. These reasons are supported by substantial evidence.

As to Plaintiff's ability to interact with supervisors, the ALJ correctly noted that Plaintiff reported she gets along "OK" with authority figures, Tr. at 225, and her husband reported she gets along "good" with authority figures, Tr. at 217. <u>See</u> Tr. at 28. The ALJ also indicated that Plaintiff was described as "pleasant" in September 2014 hospital records, Tr. at 413, and as "pleasant and cooperative" in June 2013 hospital records, Tr. at 445 (capitalization omitted). <u>See</u> Tr. at 28.

With regard to Plaintiff's ability to maintain persistence and pace, the ALJ stated that Plaintiff completed high school[10] and that Plaintiff's mental health treatment has been

---

[9]     The ALJ accepted Dr. Risch's opinions that Plaintiff "would only be able to learn job skills that are repetitive and rote in nature" and would be unable to work with the public and co-workers. Tr. at 26; <u>see</u> Tr. at 373 (Dr. Risch's opinions).

[10]     Although Plaintiff argues the ALJ did not take into account the fact that Plaintiff was enrolled in Special Education classes in high school, it is clear the ALJ considered it. The ALJ explicitly mentioned it in the Decision, <u>see</u> Tr. at 27, and incorporated it in the hypothetical he posed to the VE at the hearing, <u>see</u> Tr. at 52.

minimal and conservative in nature.[11] Tr. at 28. The ALJ also noted that although Dr. Risch based her opinion regarding persistence and pace on Plaintiff's anxiety and pain, see Tr. at 373, the "diagnostic images and treatment do not support the severity of [Plaintiff's] pain complaints . . . ," Tr. at 28.[12] Additionally, the ALJ indicated that in the evaluation report containing the opinions at issue, Dr. Risch stated she reviewed medical records from Plaintiff's hospitalization in 2008. Tr. at 28; see Tr. at 369. The ALJ correctly stated that during this hospitalization, Plaintiff was assigned a "[Global Assessment Functioning ('GAF')] score of 37, indicating major impairment in several areas," but her "blood alcohol level was 0.259." Tr. at 28 (citation omitted); see Tr. at 333, 369. Plaintiff was "diagnosed with alcohol dependence, in addition to a mental disorder." Tr. at 28; see Tr. at 333. Accordingly, the undersigned finds that the ALJ's rejection of examining physician Dr. Risch's opinions regarding persistence and pace and Plaintiff's inability to interact with supervisors is supported by substantial evidence.[13]

---

[11] Plaintiff argues the ALJ erred in considering the infrequency of her treatment because, according to Plaintiff, she was unable to afford treatment. Pl.'s Mem. at 22. In support of this assertion, Plaintiff cites only a medical record indicating that she was unable to afford a specific medication in 2007. Id.; see Tr. at 319. Plaintiff does not indicate that she was unable to afford any other treatment. In any event, because "the ALJ did not rely significantly on [Plaintiff's lack of significant treatment], . . . the ALJ's failure to consider evidence regarding [Plaintiff's] ability to afford . . . treatment does not constitute reversible error." Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015) (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)).

[12] Plaintiff argues the ALJ's rejection of Dr. Risch's opinion that Plaintiff is not able to maintain persistence and pace was improper because the ALJ based this rejection on the finding that Plaintiff's assertions regarding back pain were exaggerated, and according to Plaintiff, Dr. Risch's opinion was not based on back pain. Pl.'s Mem. at 21. This argument is without merit as Dr. Risch indicated that Plaintiff would be unable to maintain persistence and pace due to both her anxiety and pain. See Tr. at 373.

[13] The ALJ, however, failed to discuss Dr. Risch's opinion regarding Plaintiff's intellectual abilities, and it is unclear what weight, if any, the ALJ gave to this opinion. This issue is addressed infra at Part IV.B.2.a.

**B. Listing 12.05**

Plaintiff argues her mental impairments meet the criteria in paragraph C of Listing 12.05 or, alternatively, the criteria in paragraph D. Pl.'s Mem. at 11-20. Responding, Defendant contends Plaintiff's arguments consist mostly of conflicting evidence that does not undermine the substantial evidence on which the ALJ relied. Def.'s Mem. at 8-10.

**1. Applicable Law**

At step two of the sequential evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id.

When evaluating mental impairments, the Regulations in effect at the time the Decision was rendered directed the use of a "'special technique' dictated by the Psychiatric Review Technique Form ("PRTF") for evaluating mental impairments." Moore, 405 F.3d at 1213 (citing 20 C.F.R. § 404.1520a(a)[14]). The PRTF is further described in the introduction to section 12.00 of the listing of impairments. See 20 C.F.R. Part 404, Subpart P, Appendix

---

[14]    The Regulation was substantially amended on March 27, 2017. However, the relevant one for purposes of this appeal is the version that was in effect from June 11, 2011 to January 16, 2017.

1 § 12.00(A).[15] In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).

Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained. 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" of the listings: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).

The first three broad functional areas are rated using a five-point scale: none, mild, moderate, marked, and severe. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). The fourth is rated using a four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). "Marked" means "more than moderate but less than extreme" and occurs when "several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [an individual's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(C).

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established. 20 C.F.R. §§ 404.1520a(d) and 416.920a(d). The four broad functional areas

---

[15] On September 26, 2016, the SSA revised section 12.00 of the listing of impairments, effective May 27, 2015. See Revised Medical Criteria for Evaluating Mental Disorders, 65 FR 50746-01, 2016 WL 5341732, at *66138. The SSA clarified, however, that "[f]ederal courts will review [the Commissioner's] final decisions using the rules that were in effect at the time [the SSA] issued the decisions." Id. n.1. Thus, the relevant version of section 12.00 for purposes of this appeal is the one that was in effect on May 27, 2015, the date of the ALJ's decision. See Tr. at 34.

"are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4. If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

At step three of the sequential evaluation process, the burden rests on the claimant to prove the existence of a listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

When a claimant alleges multiple impairments, "a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987) (quoting Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)). An ALJ must "make specific and well-articulated findings as to the effect of the combination of impairments and . . . decide whether the combined impairments cause the claimant to be disabled." Id. The ALJ, however, is not required to "mechanically recite the evidence leading to her determination" because "[t]here may be an implied finding that [the] claimant does not meet a [L]isting." Hutchison v. Bowen, 787 F.2d 1461, 1463

(11th Cir. 1986). The United States Court of Appeals for the Eleventh Circuit has held that an ALJ properly considered the claimant's impairments in combination when she stated that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis omitted).

Listing 12.05 describes the disorder of Intellectual Disability (formerly called "Mental Retardation") and the requirements at issue:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added); see Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 766 (11th Cir. 2012) (unpublished) (stating that "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria").

## 2. Analysis of ALJ's Findings

### a. Paragraph C

The ALJ found that Plaintiff's mental impairments do not meet the criteria in paragraph C because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. at 24. According to the ALJ, "the tests administered during [Plaintiff's] vocational evaluation do not appear to have been administered by an acceptable medical source." Tr. at 24.

On April 29, 2008, Plaintiff was evaluated at Vocational Services of Northeast Florida, Inc., where she was administered a Beta Examination III ("IQ test") to assess her IQ score.[16] Tr. at 315-18. The IQ test indicated that Plaintiff's IQ score is 65, which signifies intellectual disability. Tr. at 318; see Mental Retardation, Stedman's Medical Dictionary (2014) (noting that "an IQ of 70 or less indicates mental retardation" and "an IQ of 70-85 signifies borderline intellectual functioning").[17] This is the only IQ test and score in the administrative transcript.

---

[16]    It is unclear who was responsible for administering the IQ test. The report containing the results of the IQ test is apparently from Vocational Services of Northeast Florida, Inc., but it does not have a signature or otherwise state who administered the IQ test. See Tr. at 315-18. Plaintiff asserts that C. Richard Grissinger, M.S., C.V.E. administered it because his name appears on the footer of the first page of the report. Pl.'s Mem. at 15; see Tr. at 315. This footer, however, seems to be part of the letterhead and does not appear to indicate that Mr. Grissinger administered the IQ test.

[17]    Although Stedman's Medical Dictionary uses the term "mental retardation," the United States Supreme Court has adopted use of the term "'intellectual disability' to describe the identical phenomenon," and the latest edition of the Diagnostic and Statistical Manual of Mental Disorders does the same. Hall v. Florida, 134 S. Ct. 1986, 1990 (2014); see also Rosa's Law, 124 Stat. 2643 (changing

(continued...)

The ALJ's rejection of the IQ test score and his explanation for the rejection at step three are troublesome for three reasons.

First, the ALJ found at step two that one of Plaintiff's severe impairments is "borderline IQ," Tr. at 21, but it is unclear what evidence the ALJ relied on to make this finding.[18] In making this finding, the ALJ, without explanation, apparently relied at least to some degree on the IQ test score that he clearly rejected at step three, since this is the only IQ test score in the administrative transcript. This inconsistency frustrates judicial review.

Second, Dr. Risch apparently treated the IQ test score as valid; indeed, she stated that the score "suggested that [Plaintiff] was functioning at the [m]ild [m]ental [r]etardation intellectual classification," and she diagnosed Plaintiff with "Mild Mental Retardation." Tr. at 373. While the ALJ detailed with great specificity the weight he gave to various conclusions of Dr. Risch, Tr. at 26, 28-29, it is unclear what weight, if any, the ALJ gave to Dr. Risch's opinion regarding the IQ test score and Plaintiff's intellectual abilities, see Tr. at 373 (Dr. Risch's opinion).[19] This also frustrates judicial review.

Third, the ALJ's rejection of the IQ test score is further complicated by the ALJ's failure to evaluate it, especially given Dr. Risch's apparent reliance on it. The undersigned recognizes some courts have stated that "[w]ith respect to determining the validity of IQ [test] scores, the [R]egulations provide that there must be documentary evidence from an acceptable medical source, which means a licensed psychiatrist, psychologist, or physician." Bush v. Comm'r of Soc. Sec., No. 6:14-cv-1961-ORL-GJK, 2016 WL 1182878, at *4 (M.D.

---

[17](...continued)
entries in the U.S. Code from "mental retardation" to "intellectual disability").

[18]    As explained in more detail below, it is unclear whether the ALJ accounted for the severe impairment of "borderline IQ" in the RFC. See infra Part IV.C.2.

[19]    The ALJ did note that in a previous examination in 2009, Dr. Risch had "diagnosed her with a learning disorder, but ruled out borderline cognitive disorder." Tr. at 25; see Tr. at 340.

Fla. Mar. 28, 2016) (unpublished); see also Giles ex rel. Dowdell v. Barnhart, 182 F. Supp. 2d 1195, 1199 (M.D. Ala. 2002) (finding that "it was reasonable for the ALJ to place less weight on the results of [an IQ test score] because it was not administered by an acceptable medical source" where "the objective medical evidence indicates that the [plaintiff] does not suffer from disabling mental retardation"). SSR 06-03P, however, nonetheless provides that "[o]pinions from . . . sources[ ] who are not technically deemed 'acceptable medical sources' under [the SSA's] rules[ ] are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03P, 2006 WL 2329939, at *3. It does not appear that the ALJ evaluated the IQ test score; instead, he summarily rejected it solely because the IQ test was not administered by an acceptable medical source. The ALJ's rejection of the IQ test score on this singular basis, without any substantive evaluation, frustrates judicial review.

Accordingly, remand is necessary for the ALJ to properly evaluate the IQ test score at step three and to provide an explanation for the apparent inconsistencies regarding the ALJ's finding of "borderline IQ" and the rejection of the only IQ test score in the administrative transcript. On remand, the ALJ shall also reconsider Dr. Risch's opinion and give appropriate weight to her opinion regarding Plaintiff's diminished intellect.

b. Paragraph D

The ALJ found that Plaintiff has moderate limitations in the areas of activities of daily living; social functioning; and concentration, persistence, and pace. Tr. at 22. These findings are supported by substantial evidence. First, as the ALJ notes and Plaintiff concedes, Plaintiff's testimony at the hearing indicates that her limitations in activities of daily living are largely due to her physical impairments. Tr. at 22; see Tr. at 44-47. The ALJ correctly stated that Plaintiff is able to maintain her personal care, prepare simple meals, shop, watch

television, and wash dishes. Tr. at 22; see Tr. at 44-45, 212-13, 220-23. But see Tr. at 45 (Plaintiff's testimony that she stays in the house "all the time" and does not read); Tr. at 46 (Plaintiff's testimony that she goes grocery shopping once a month at 2:00 A.M. because she "do[es not] like to be around people"); Tr. at 214 (Plaintiff's report that she does not have a bank account and that her husband pays all the bills); Tr. at 338 (Dr. Risch's evaluation note indicating Plaintiff "has never attempted to obtain a driver's license"). Most of the evidence Plaintiff cites to argue her limitations in this area are more than moderate relate to her intellectual abilities and not to her activities of daily living. See Pl.'s Mem. at 16 (citing evidence indicating Plaintiff has a "borderline intellect," functions at a second-grade level, "can recite the alphabet only very slowly," "cannot spell simple words," "cannot follow written instructions," and "has limited problem[-]solving skills").[20]

Second, as to social functioning, the ALJ correctly noted that in the Function Report, Plaintiff stated she has difficulties getting along with neighbors and does not engage in social activities, and that Plaintiff testified she socially isolates herself. Tr. at 22; see Tr. at 224 (Function Report); Tr. at 45-46 (testimony). Plaintiff's husband, however, reported that Plaintiff's impairments have no effect on her ability to get along with others, Tr. at 216, including neighbors and authority figures, Tr. at 217. See Tr. at 22 (ALJ's Decision). Further, Plaintiff also reported she gets along "OK" with authority figures. Tr. at 225. But see Tr. at 46 (Plaintiff's testimony that she does not go to church or visit friends and relatives). Relying on this evidence and on Plaintiff's conservative treatment, the ALJ properly concluded that Plaintiff has moderate difficulties in social functioning.

---

[20]     As noted above, some of this evidence consists of Dr. Risch's opinions. See Tr. at 340, 339, 373.

Third, with regard to Plaintiff's ability to maintain concentration, persistence, and pace, the ALJ correctly noted Plaintiff does not need to be reminded to care for personal needs; she can maintain her personal needs, prepare meals, and shop; and she completed high school. Tr. at 22; see Tr. at 45, 212-13, 220-22. But see Tr. at 213-16 (Plaintiff's husband's reports that it takes Plaintiff a "long time to complete meals," "she tries to do housework but not for very long," she watches TV but "not very often and not to[o] well," and she follows spoken instructions but "not for very long"). The ALJ also correctly stated that Plaintiff testified she used to complete crossword puzzles, but that she no longer does because she "can[not] understand the words." Tr. at 25; see Tr. at 45-46. As noted by the ALJ, the administrative transcript "does not indicate the existence of any recent event that would cause [Plaintiff] to be unable to understand or complete puzzles that she had previously been able to complete." Tr. at 25.

In sum, substantial evidence supports the ALJ's finding that Plaintiff has moderate limitations in the areas of activities of daily living; social functioning; and concentration, persistence, and pace. Thus, the ALJ's finding that Plaintiff's mental impairments do not meet paragraph D of Listing 12.05 is supported by substantial evidence.

## C. RFC Determination

With respect to the RFC determination, Plaintiff asserts that the ALJ erred in failing to include in the RFC "the limitation that [Plaintiff] would not be able to maintain persistence and pace," Pl.'s Mem. at 20, and Plaintiff's "inability to appropriately interact with supervisors," id. at 23. In making these arguments, Plaintiff relies on certain aspects of Dr. Risch's opinions that, as noted above, the ALJ properly discounted. Id. at 20-24.

### 1. Applicable Law

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether the claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing the claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

### 2. Analysis of ALJ's Findings

Upon review, the undersigned finds that the ALJ properly accounted for Plaintiff's limitations in persistence and pace and did not err in excluding from the RFC an inability to interact with supervisors.[21] The ALJ properly accounted for Plaintiff's moderate limitations in persistence and pace by limiting Plaintiff to "simple tasks" and a "low-stress work environment." Tr. at 24; see Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871 (11th Cir. 2011) (finding that the limitations of simple tasks and only being able to concentrate for brief periods of time accounted for the claimant's moderate difficulties in concentration, persistence, and pace); Dawson v. Comm'r of Soc. Sec., No. 6:11-cv-1128-ORL-28, 2012 WL 1624267 (M.D. Fla. May 9, 2012) (unpublished) (collecting cases which recognize that

---

[21]    The undersigned notes that if on remand the ALJ finds that the IQ test score is valid, it would be unnecessary to make an RFC determination.

the inclusion of limitations such as work involving simple tasks and/or simple instructions properly accounts for moderate limitations in concentration, persistence, and pace).

With regards to Plaintiff's ability to interact with supervisors, Plaintiff reported she gets along "OK" with authority figures, and her husband reported that she "gets along good" with authority figures. Tr. at 217, 225. They both indicated Plaintiff has never been fired from a job because of problems getting along with other people. Tr. at 217, 225. Further, the RFC properly accounts for Plaintiff's moderate limitations in social functioning given that the ALJ found Plaintiff "must avoid contact with the public and co-workers" and her work should be "limited to work that does not require the assistance of others or for her to assist others in performing their tasks." Tr. at 24. Thus, the ALJ's decision to exclude from the RFC an inability to interact with supervisors is supported by substantial evidence.

The undersigned notes, however, that it is unclear whether the ALJ accounted for the severe impairment of "borderline IQ," Tr. at 21, in the RFC. The only limitation in the RFC that could possibly address Plaintiff's diminished intellect is the limitation to "simple tasks." Tr. at 24. The ALJ's failure to explain how he accounted for this severe impairment, if at all, frustrates judicial review. Accordingly, on remand, the ALJ shall account for Plaintiff's "borderline IQ" in the RFC, unless his reevaluation of the IQ test score's validity makes it unnecessary to make an RFC determination.

### V. Conclusion

For the foregoing reasons, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instruction:

   (A)   Reevaluate Plaintiff's severe impairment of "borderline IQ"; if "borderline IQ" is found to be a severe impairment, discuss the evidence that supports the existence of this severe impairment and account for it in the residual functional capacity determination;

   (B)   Evaluate the IQ test score, as well as Dr. Sherry Risch's opinion regarding the IQ test score and Plaintiff's diminished intellect;

   (C)   If the IQ test score is found to be valid, reevaluate the step-three finding; and

   (D)   Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

   **DONE AND ORDERED** at Jacksonville, Florida on March 30, 2018.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of record